ELEVENTH WARD BANK v. NEW YORK & N. J. FIREPROOFING CO.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. CORPORATE NOTE—EXECUTION—AUTHORITY—EVIDENCE.
    Evidence that defendant's board of directors had given their consent to the execution of a note by an officer in the corporation's name was sufficient proof of the officer's authority to execute the note.
2. FINDINGS OF FACT—APPEAL.
    Findings of fact will not be disturbed where the evidence was conflicting and authorized the findings.
3. NOTE—CONSIDERATION.
    The receiver of an insolvent company borrowed money from plaintiff, and executed his note therefor, secured by a receiver's certificate as collateral. Defendant corporation was afterwards organized under an agreement by which it assumed the obligations of the defunct company, and executed new notes in lieu of the old. *Held*, that the surrender of the receiver's note and certificate by plaintiff constituted a sufficient consideration for the execution of the new note by defendant.
    Van Brunt, P. J., and Rumsey, J., dissenting.

Appeal from trial term, New York county.

Action by the Eleventh Ward Bank against the New York & New Jersey Fireproofing Company on a note. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Charles K. Beekman, for appellant.
Alfred B. Cruikshank, for respondent.

HATCH, J. The action was upon a promissory note dated July 1, 1899, for $10,000, due six months after date, with interest, and was the last of a series of renewals of an original note for a like amount, dated January 1, 1895. The defense was want of authority in the officers of the defendant to issue the note, and that there was no consideration for it. It appears that in 1890 a receiver of the Lorillard Brick-Works Company was appointed, and in or about 1891 such receiver issued certificates of indebtedness, pursuant to an order of the court of chancery of the state of New Jersey. On the 25th day of September, 1891, this receiver (Mr. Charles Siedler) negotiated a loan of $10,000 from the plaintiff, upon his note as receiver, payable on demand, and secured by a receiver's certificate for a like amount. While the plaintiff still held the note and certificate this defendant

was organized to take the assets of the Lorillard Company. Prior to the organization of defendant an agreement was entered into between the plaintiff and other holders of the certificates of the receiver of the Lorillard Company, of the one part, and Gouveneur Tillotson, as trustee, of the other, wherein it was agreed that a new company should be organized, under the name of the New York & New Jersey Fireproofing Company, and that on its organization all the rights, property, and effects of the Lorillard Company should be transferred to it, and that the new company should, in lieu of the existing liens on the property, issue new obligations, and that all existing liens thereon should be canceled. And it was therein further agreed that the holders of the receiver's certificates, including the plaintiff and the other parties of the first part to said agreement, should surrender the said certificates, and accept in lieu thereof the first mortgage bonds of the new company, at par, for the amount of the certificates held by them, respectively, at any time within 90 days from the date of the agreement, and, "all the covenants and condition of this agreement being fully kept and performed, that they, the said parties hereto, will, and they hereby do, release and discharge Charles Siedler, as receiver of the Lorillard Brick-Works Company, from any and all liabilities, claims, and demands touching, arising, or growing out of said receivership, and do hereby consent that the said Charles Siedler be released and discharged from his duties as such receiver." When the president of the plaintiff was approached for the purpose of securing his participation in said contract, he stated that he wanted a note; and Mr. Siedler, the receiver, who was conducting the negotiations, testified that he told him he had no authority to issue such a note, and he would have to get the consent of his directors,—meaning the directors of the new company when organized. Siedler afterwards wrote the cashier of the plaintiff, in answer to a letter calling his attention to the agreement to furnish a note, that he must obtain the consent of the directors of the company. This consent was afterwards obtained, and the note of which the note in suit is a last renewal was executed and delivered to the plaintiff.

The authority to execute the note clearly appears, and, if it was made and delivered for a good consideration, the judgment must be affirmed. The defendant company was organized in or about the month of February, 1895, as contemplated by the agreement mentioned; and, on the 16th day of May following, the plaintiff, at the request of Mr. Siedler, an officer of the company, surrendered its said receiver's certificate, in performance of its agreement so to do, but did not then receive the bonds in exchange, or surrender the receiver's note. On May 21st, five days later, Mr. Siedler delivered the bonds and the note of the new company, dated January 1, 1895 (the same date as the bonds), and his receiver's note was then delivered to him. The original note of the defendant, and the note made in renewal thereof, upon which this action was brought, recite that the maker has deposited as collateral security therefor 20 first mortgage bonds, each for $500, of the New York & New Jersey Fireproofing Company, with authority to sell, etc., applying net proceeds to the payment of the note, including interest, accounting to maker for the

surplus only. Siedler, the receiver, attempted to deny that he ever gave a receiver's note to the plaintiff, to which his certificate was collateral security; but the proof upon that point was overwhelming, and no attempt was made to rebut the testimony of the officers of the plaintiff bank upon that subject. But it is contended that that note furnished no consideration for the note of the defendant company; that the note of the defendant was but a dummy, given, as Siedler testified, in order that the transaction might appear as a live account with the bank; that the president did not wish to have it appear as if the bank owned the bonds. All this is disputed by the president, and he is very strongly corroborated by the correspondence between Siedler, for the defendant company, and the plaintiff, and by the very nature of the transactions themselves. And it is also claimed that the note was delivered upon the express condition that it should be renewed from time to time until the maturity of the bonds, which does not occur until 1905, and therefore the note was not due. These questions have been determined in favor of the plaintiff, upon conflicting testimony, which authorized the court below so to find, and which is binding upon this court.

Again, it is contended that there is no consideration to support the note, because the plaintiff was bound to surrender the receiver's note upon receiving the bonds of the new company, by the very terms of the agreement referred to, which purports to release and discharge Charles Siedler, as receiver, etc., from any and all liabilities, claims, and demands touching, arising, or growing out of said receivership, and to consent that said Siedler be released and discharged from his duties as such receiver. Upon this proposition it is to be noted that no mention is made in this agreement of the receiver's note. Siedler, even at the time of the trial, seems ignorant of the giving of the note, although, as already appears, the fact was established beyond question. It must be presumed, therefore, that the words "liabilities, claims, and demands," there used, referred to the liabilities, claims, and demands mentioned and specified in the agreement, viz. the receiver's certificates, for no others are specified. And it, in effect, discharged the receiver from all personal liability. Beyond this we do not think that it can fairly be construed to operate. In order to reach a correct determination of the question presented, it is essential to bear in mind the exact relation of the parties prior to the execution of the agreement. It cannot be doubted but that the transaction between the receiver and the bank was a loan of money upon the receiver's note, for the payment of which the receiver's certificate was collateral security. The bank advanced thereon $10,000 in cash, which has never been repaid, and it could have maintained an action upon that note at maturity. When the agreement was made, as we have heretofore observed, no mention of the note was made therein; but the plaintiff insisted, before the execution of the agreement, that it should have a note, to which the bonds should be held as collateral security. And this note, as we have heretofore noted, was given, reciting its purpose and the terms upon which it was held. It is clear, therefore, that there never was but one indebtedness, and that was the original indebtedness of the receiver upon his note. The taking of

the bonds, as the agreement expressed, was a mere exchange of collateral security, and was, to all intents and purposes, a mere continuation of the original indebtedness, except as the receiver and his certificate were discharged and surrendered, and the company and its bonds became substituted as party and security for the payment of the debt. There is not a word in the contract which compels a construction that the primary indebtedness of the company is measured by the contract contained in the bonds. The acts of the parties themselves, after the execution of the agreement and the delivery of the bonds, give practical interpretation to its terms. The payment of interest upon the debt was always made upon the note. This appears from the testimony of the plaintiff's president, and the acts of the parties clearly show the fact. Siedler, the officer of the defendant, does not deny the testimony of the plaintiff. On the contrary, his statement is that he did not know how the payment of interest was being applied, until, by his direction, and acting under the advice of counsel, the interlineation appearing in the check for interest, that it was for payment of interest upon the bonds, was made. But the testimony of the plaintiff's president is clear and distinct that interest had always been paid upon the note, and, when the interlined check was received, plaintiff refused to accept it, on account of the attempted application of the payment of interest on the bonds, and returned it to the defendant; and this was the first time that the defendant claimed it should be so applied. It is, therefore, clear that not only was the note given as evidence of the primary debt, but it was a continuation of the original indebtedness, also evidenced by a note; and all payments of interest made and received down to the commencement of the action were as interest upon the note, and for no other purpose. This, taken in connection with the fact that the surrender of the receiver's certificate furnished a consideration for the delivery of the note and bonds, and that the defendant company was possessed of full knowledge of the facts, and ratified that agreement by the execution and delivery of the note in performance thereof, leads us to the conclusion that the note in question was founded upon a valid consideration. This makes clear these facts: First. The note was given for value, as it was founded upon the antecedent, pre-existing debt of the receiver. Negotiable Instruments Law (Laws 1897, c. 612, § 51). Second. The execution of the agreement to discharge the receiver and exchange the certificate for the bonds was upon the express condition that the note should be executed and delivered, and the same, having been consummated, became binding upon the parties thereto, in accordance with its tenor and effect.

If these views are correct, it follows that the judgment should be affirmed, with costs. All concur, except VAN BRUNT, P. J., and RUMSEY, J., who dissent.

RUMSEY, J. I regret that I cannot concur with the majority of the court in affirming this judgment, but it seems to me that, both upon the law and the facts, it is clear that there was no consideration for the original note. That the defendant is in a situation to raise the question of the lack of consideration is not to be denied.

Negotiable Instruments Law, §§ 50–54. The facts claimed by the plaintiff are: That before October, 1894, the Lorillard Brick-Works Company had been in the hands of a receiver. That receiver's certificates to the amount of $99,500 had been issued, which were prior liens upon the property of the company. The Eleventh Ward Bank had advanced to the receiver $10,000, either upon the certificates, as is claimed by the receiver, or upon the receiver's note, with the certificates as collateral, as is claimed by the president of the bank. But, in whichever way the loan was made, the receiver owed the bank $10,000, and the bank held as security the $10,000 of the receiver's certificates, and his note for that amount, as will be conceded for the purposes of this argument. On the 10th of October, 1894, the receiver and the holders of the receiver's certificates entered into a contract, to which the Eleventh Ward Bank was a party, in which it was recited that the receiver's certificates were prior liens on the property of the company, and that the contracting parties were the owners of the certificates. It was further recited that it was in contemplation to organize a new company, which, when organized, should issue $150,000 first mortgage bonds, of the par value of $1,000 each, to be a first lien upon all the property and effects of the company; and it was agreed that the owners of the receiver's certificates should surrender them, and accept in lieu thereof the bonds of the new company at par for the amount of their certificates. Then followed an agreement that each of these persons would exchange the certificates held by them for the first mortgage bonds of the new company, and that each of them "will and do hereby release and discharge the receiver from any and all liabilities, claims, and demands touching, arising, or growing out of said receivership." After that agreement had been made, the new company was organized, its bonds were issued as had been arranged, and there were transferred to each of the parties to the contract the bonds to which they respectively were entitled; and they thereupon surrendered the receiver's certificates, in accordance with the agreement. The president of the Eleventh Ward Bank, without the knowledge of the other parties to the agreement, requested that there should be given to that bank a note for $10,000, to take up the receiver's note. He says that that note was delivered, and the receiver's note given up for it, and as collateral to it the bonds of the new company were taken. That is denied by the receiver, and, while I have no doubt that the evidence establishes that the receiver's version of the transaction represents the absolute truth of the matter, yet, for the purposes of the argument, I shall for the present assume that the transaction was as was testified to by the president of the bank, namely, that after this contract of the 10th of October, 1894, was made, and after the bank had become liable upon it and bound by it, he, without the knowledge of the other contracting parties, insisted that in addition to the giving up of the receiver's certificates by the bank, and the acceptance of the bonds of the new company instead, he should receive the note of the new company for $10,000, to which the bonds should be held as collateral. Admitting for the present that this was so, the question then is whether that arrangement furnished a good consideration for the note.

The contract by virtue of which the receiver's certificates were to be surrendered and the bonds received was made in October, 1894. There is no dispute that all the parties were bound by it, and, as a result of it, not only was the Eleventh Ward Bank to exchange its receiver's certificates for the bonds of the new company, but it was further bound to discharge and release the receiver from all liabilities, claims, and demands growing out of the receivership. It is said by the majority of the court that, because no mention was made in the agreement of the receiver's note, the liabilities, claims, and demands touching and growing out of the receivership did not include that note, but only applied to the liabilities arising out of the issuance of the receiver's certificates. But the debt created by those certificates was not only a lien upon the property of the company, which was to be paid out of the assets, but the certificates contained the agreement of the receiver to pay the debt; and, when they were given up, the liability, so far as the debt was concerned, was at an end. It was not necessary, to relieve the receiver from any further liability on the certificates, that there should be any further release than was operated by merely surrendering them. When, therefore, it was provided that not only should the certificates be given up, but that all claims and liabilities touching and growing out of the receivership should be released and discharged, it must be presumed that something more was intended than that the release should be limited in effect to the necessary implication to be given by the law to the surrender of the certificates, and that the parties must have intended to release the receiver from any other personal liability which they had against him. It is quite clear that no other construction could be placed upon this agreement, consistent with good faith between the parties. The new corporation was personally liable to pay its bonds which were given in exchange for the certificates, and which were, by their terms, not to be paid until 10 years after their date; so that, by the express terms of the contract, each person who surrendered certificates and took bonds gave 10 years to the company in which to pay the debt. The object is quite clear. It was to afford the new corporation 10 years' time in which to establish its business, without danger of being called upon to pay the principal of its debts. Each one of the parties to that arrangement had an interest in procuring that extension of time, and good faith required that, if given by one, it should be given by all, so that no one of them should have an advantage over another in the payment of his debt. So that when this contract was made, in October, 1894, the Eleventh Ward Bank, which became a party to it, was bound not only to give up the receiver's certificates, but when it had done that, and had received the bonds of the new company, it was bound to discharge the receiver from every liability which it had against him growing out of the certificates, or the money which it had loaned on the security of them. If that be the correct construction of this agreement, then it necessarily follows that all that the Eleventh Ward Bank had the right to require as the consideration for giving up its claims against the receiver was the delivery to it of the $10,000 of the bonds. The delivery of the note, whether the bonds were to be

collateral to it, or whether it was simply to keep alive the account, for the purpose of deceiving the bank examiners as to the nature of the transaction, was no part of the consideration for the bonds, which were to be received in full cancellation of the liabilities of the receiver; and if the bank could have been compelled, as it undoubtedly could have been, to deliver the certificates upon the receipt of the bonds, the fact that a note was voluntarily given at its request did not furnish any consideration for the note. Vanderbilt v. Schreyer, 91 N. Y. 392. As a matter of law, it seems to me, therefore, that there was no consideration for the original note, and consequently none for the note sued upon.

But, passing the question of law, I think that the finding that the original note was given as consideration for the return of the receiver's note was entirely unwarranted by the evidence. This finding as to the consideration of the note is not binding upon us, but the Code expressly provides that it shall be reviewed by us upon a proper exception. Code Civ. Proc. § 1022. If upon such review it appears that the finding is against the weight of the evidence, it is undoubtedly our duty to reverse the judgment founded upon it. In this case not only is the finding against the weight of the evidence, but, in my judgment, the letters which it is conceded were sent by Siedler to the officers of the bank establish clearly, not only that the receiver's note cut no figure in this transaction, but they throw grave doubts upon the existence of any such note. It is said by the witnesses for the plaintiff that the receiver's note was given on the 25th of September, 1891, which is precisely the date on which the receiver's certificates were delivered to the bank. The contents of this note are nowhere stated, nor is any evidence given about them, except that it was a note for $10,000, payable on demand. There is no claim in the case that this note was binding upon the receiver individually, or that it had any greater effect than to make the amount of it payable out of the funds in his hands as receiver which might be applicable to that purpose. It appears affirmatively that the receiver's certificates which were given to the bank were on account of a loan of $10,000, which sum, as receiver, Siedler promised to pay; and the note, if there was one, added nothing to the obligation created by the certificates. The transaction between the parties with respect to this matter, as will be seen hereafter, was conducted entirely by correspondence, and in all that correspondence there is no mention of the receiver's note. Neither is there any mention of the receiver's note in the contract by which it was agreed that the loan of $10,000 evidenced by the receiver's certificates, which were precisely of the same date, should be discharged upon receipt of the bonds. In addition to that, Mr. Siedler testifies that there was no note, and while, in respect to this matter, it is possible that the evidence may be so conflicting that a finding that there was a note would not be against the weight of it, yet I am satisfied that his version of the transaction is the natural and usual one, and is true. But whether there was a note or not was not of the slightest importance. The contract to deliver the bonds and receive the certificates, and discharge the receiver of all liability and claims, was made in October,

1894. Steers, the president of the bank, says that the bonds were delivered to him on the 16th of May, 1895, and that the bank then gave Siedler the receiver's certificates and kept the note. He says further that on the 21st of May, five days afterwards, Siedler came to the bank himself with the bonds and the note dated January 1, 1895, and took away the receiver's note. That testimony is corroborated to some extent by Bloom, who read certain entries in books to the same effect. Siedler contradicts this, and, by way of disproving it, he produces in the first place a letter from the letter book of the company, dated the 5th of March, 1895, transmitting to the bank the bonds in accordance with the agreement of October, 1894. It is conceded that this letter was sent, and no one in the bank denies having received it. The most that can be said is said by Mr. Steers,—that he has no recollection about it. It is impossible to believe, in view of the situation of affairs at that time, and in view of the subsequent letter, which will be referred to, that the transaction did not take place on that date, and that Siedler did not deliver the bonds at that time. It is conceded, too, that on the 26th of April there was sent to the bank a letter, a copy of which appears in the letter book of the defendant, to the effect that the request that a note for $10,000, as collateral to the bonds, should be given to the bank, had been considered by the company, and that its directors had authorized him to deliver to the bank such a note, upon the terms mentioned in the letter. Too much stress cannot be laid upon the fact that it is conceded that all these letters were sent, and, when it is conceded that they were sent, the presumption arises that they were received (Huntley v. Whittier, 105 Mass. 391; 1 Greenl. Ev. § 40; Moran v. Abbott, 26 App. Div. 570, 50 N. Y. Supp. 337), and there is nothing in this case to overthrow that presumption. The next step in the transaction, as shown by the correspondence, took place on the 20th of May, 1895. On that day there was transmitted to the bank, in a letter, the company's note for $10,000, dated January 1, 1895, as collateral to the $10,000 of the first mortgage bonds of the company, which had already been delivered. It will be noticed that the only thing that was delivered at that time was the note dated the 1st of January, 1895. The bonds were referred to in such a way that it is quite clear that they had already been delivered to the bank. There is nothing said about the receiver's note, there is nothing said about the receiver's certificates, and it is necessarily to be inferred from that letter that the whole transaction had been completed before then, so far as the contract of October, 1894, was concerned, and that all that was done on that date was the delivery of the note in pursuance of the subsequent agreement of the parties to that effect. If this note was sent by mail on that day in the letter referred to, and the bonds had previously been delivered, the testimony of Mr. Steers to the effect that on the next day the note and bonds were delivered to him, and the old receiver's note given back to Siedler, cannot be true. Fortunately for the defendant, not only is the testimony of Siedler corroborated by this letter of May 20th, but the receipt of that letter inclosing the note is expressly acknowledged on the same day by the letter from Mr. Brown, the cashier, which it is conceded

was sent to Siedler in answer to the letter inclosing the note. Brown's letter is quite as important to make the defendant's case as is Siedler's letter of the same date, because it shows precisely what the transaction was. It acknowledges the receipt of the letter dated May 20, 1895, inclosing the note of the defendant company for $10,000, dated January 1, 1895, for six months, and admits that at that time the bonds were in the hands of the bank. It is to be noticed that this letter says nothing whatever about the receiver's note, which it is claimed was at that time in the possession of the bank, but it refers only to the defendant's note, which was delivered, not in pursuance of the contract of October, 1894, but in accordance with an understanding had between the parties represented by the cashier of the bank, on the one hand, and Siedler on the other. There is no possible reason to suppose that these two letters did not represent the whole transaction that took place on that day, and they utterly destroy the testimony of Steers to the effect that the transaction took place on the next day, and that the note and bonds were then delivered in return for the receiver's note. Too much stress cannot be laid upon the fact that this receiver's note, which is said to have been dated on the 25th of September, 1891, was never renewed, was never referred to by any one, but was kept secret between the parties, was never mentioned in the correspondence, and its existence never suggested until it became necessary to assert that it was the consideration for the note in suit, which, without it, would undoubtedly have been without any consideration whatever. In view of the indisputable testimony of these letters, and the inference to be drawn from them if the officers of the bank were then dealing honestly with Siedler, as we must assume they were, there arises the almost necessary conclusion that the whole transaction, so far as the contract of October, 1894, was concerned, was closed on the 5th of March, 1895, by the delivery of the bonds to the bank in pursuance of its terms; that at that time Siedler had no authority to deliver the note, and that there was no agreement on the part of the defendant company to do anything of the kind, but that the note was delivered subsequently, not as part of that transaction, but as a mere matter of accommodation for the bank, as expressed in the letter of May 20, 1895, and was entirely without consideration. For this reason, also, it seems to me, the judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event of the action.

VAN BRUNT, P. J., concurs.